IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS -
HOUSTON DIVISION

| | |
|---|---|
| **PAMELA PERRY,**<br><br>   **Plaintiff,**<br><br>**v.**<br><br>**CAPTURENET, LLC,**<br><br>   **Defendant.** | **CIVIL ACTION NO. 4:21-cv-00948**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

PAMELA PERRY, ("Perry" or "Plaintiff"), by and through her attorney of record, hereby complains of CAPTURENET, LLC, ("CaptureNet" or "Defendant"), and for cause of action would show as follows:

## 1. INTRODUCTION

1.1. Defendant discriminated against Plaintiff because of her disability and refused Plaintiff a reasonable accommodation for her disability consisting of just 6 days' extended leave for post-surgery recovery, in violation of the Americans with Disabilities Act of 1990, as amended ("ADAAA") and Chapter 21 of the Texas Labor Code.

1.2. Defendant refused Plaintiff medical leave to which she was entitled under the Family and Medical Leave Act of 1993 ("FMLA"), in violation of the FMLA. Defendant interfered with Plaintiff's FMLA leave rights by refusing her medical leave and by terminating her because she needed a few days' extended leave. Defendant terminated Plaintiff in retaliation for requesting protected medical leave, in violation of the FMLA.

1.3. This action seeks back pay and front pay, compensatory damages, liquidated damages, expert witness fees, court costs, attorney's fees, pre-judgment and post-judgment interest, and all other damages permitted at law or in equity.

## 2. PARTIES

2.1. Plaintiff is a resident of Harris County, Texas.

2.2. Defendant is a Virginia limited liability corporation conducting business in the State of Texas for profit. Defendant may be served via its registered agent, Trina Edwards, 602 Pendleton Street, Alexandria, Virginia 22314.

## 3. JURISDICTION

3.1. This action is brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*.

3.2. The unlawful employment practices were committed within the jurisdiction of the United States District Court for the Southern District of Texas—Houston Division.

3.3. This Court has jurisdiction over all claims in this action. The amount in controversy is within the jurisdictional limits of this Court.

3.4. All jurisdictional prerequisites have been met. Plaintiff timely filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On December 30, 2020, the EEOC issued Plaintiff's Right to Sue letter. This complaint has been filed within 90 days of Plaintiff's receipt of her Right to Sue letter.

## 4. FACTS

4.1. Perry was hired by CaptureNet on June 12, 2017. She was employed in the position of Patient Billing Representative and worked for CaptureNet out of her home in Katy, Texas, except for a three month period, until CaptureNet terminated her employment on November 28, 2018.

4.2. Perry reported to Lucy Lopez ("Lopez"), Supervisor at CaptureNet.

4.3. Perry worked over 1250 hours for CaptureNet during the 12 month period prior to November 2018.

4.4. CaptureNet is a medical billing company headquartered in Scottsdale, Arizona. CaptureNet utilizes cloud-based call-center telephony, and hires remote call-center representatives throughout in the United States, placing patient representative agent support in the communities CaptureNet serves across the nation. CaptureNet currently serves more than 275 hospitals in 26 states.

4.5. On information and belief, CaptureNet's total number of employees within a 75 mile radius of Perry's work location in Katy, Texas, during the time she requested leave under the FMLA, was 50 or above.

4.6. Perry has been diagnosed with and suffers from coronary artery disease, hypertension, diabetes, myocardial infarction, carpal tunnel syndrome, and tendinitis.

4.7. In January 2018, Perry had a hysterectomy and informed Lopez that she needed 4 to 6 weeks off to recover. Instead of allowing Perry to take four to six weeks of leave, CaptureNet terminated Perry and told her to reapply after her recovery.

4.8. CaptureNet has a policy that it only allows medical leaves of up to 15 consecutive days, no matter what the circumstances are.

4.9. CaptureNet's policy violates the Americans with Disabilities Act ("ADA"). The ADA requires employers to provide reasonable accommodations to employees who have a disability, unless the specific accommodation would create an undue hardship for the employer. The ADA further requires employers to engage in an interactive process with employees who request accommodations for a disability to identify reasonable accommodations.

4.10. Although Perry communicated to CaptureNet that she was able to return to work in February 2018, CaptureNet refused to hire Perry back until April 2018.

4.11. On September 14, 2018, Perry was placed on a final warning for attendance. However, almost all of her absences on which the final warning was based were for medical reasons which related to Perry's disabilities and for which Perry provided a doctor's note.

4.12. On Thursday, September 20, 2018, Perry met with Lopez and informed her that almost all of the absences on which the final warning was based were for medical reasons relating to Perry's disabilities and that she had provided documentation from her doctor for them. However, Lopez refused to retract the final warning.

4.13. On September 24, 2018, Perry provided medical records from her cardiologist to Lopez and Amber Kirkpatrick ("Kirkpatrick"), Chief Financial Officer.

4.14. On October 1, 2018, Perry provided a doctor's note from her cardiologist to Lopez and Kirkpatrick. The cardiologist's note explained that Perry suffered from conditions including coronary artery disease, hypertension, myocardial infarction, and shortness of breath, as well as fluctuating blood pressure, and that Perry could need time off of work if she experienced shortness of breath or uncontrolled blood pressure.

4.15. In September, 2018, Perry informed Lopez and Kirkpatrick that she was seeing an orthopedic surgeon, that she was in constant pain radiating up to her elbow and that her wrists were getting stiff. Perry told Lopez and Kirkpatrick she needed to take time off for an upcoming wrist surgery to address her tendinitis and carpal tunnel syndrome. Lopez told Perry to send in documentation two weeks before the surgery.

4.16. On October 29, 2018, Perry emailed Lopez and Kirkpatrick a letter from her doctor informing CaptureNet that Perry was scheduled for right wrist surgery on November 16,

2018 and informing CaptureNet that Perry would need 7-10 days recovery time before returning to work.

4.17. On November 8, 2018, Perry saw that she was still on the schedule for November 16, and messaged Sara Titus ("Titus"), Supervisor, to follow up on her previous request for leave for the surgery. Titus never responded.

4.18. Perry had her right wrist surgery on November 16, 2018.

4.19. On Monday, November 26, 2018, Perry had her post operation appointment. Perry's doctor ordered her to take a further six days' medical leave and issued her a return to work for December 3, 2018.

4.20. Following her doctor's appointment on Monday, November 26, 2018, Perry emailed Lopez, Kirkpatrick, and Kate Okrongly ("Okrongly"), Human Resources Representative, to inform them that she would not be able to return to work until December 3, 2018. Perry also provided her doctor's return to work note from her November 26, 2018 appointment. Perry informed Lopez, Kirkpatrick, and Okrongly, "I'm unable to use my right hand at this time because I'm still recovering and still have stitches."

4.21. Two days later, on Wednesday, November 28, 2018, Kirkpatrick responded to Perry's message. Kirkpatrick told Perry "You must understand as a business we cannot allow these carte blanche days off …. Furthermore, you are not meeting the performance expectation for the essential job function by being out." Kirkpatrick requested that Perry submit yet another doctor's letter, however, Perry's doctor's letters had already covered the information requested. Kirkpatrick emailed Perry, "We need you to return to work tomorrow and provide this documentation requested."

4.22. Kirkpatrick further emailed Perry on Wednesday, November 28, 2018: "If you are unable to return to work this week we will not be able to continue employment."

4.23. On November 28, 2018, without waiting further, Kirkpatrick then terminated Perry and instructed her to return her work equipment immediately.

4.24. Perry was not terminated for any legitimate business reason. CaptureNet refused Perry a reasonable accommodation for her disability, harassed and discriminated against Perry because of her disability, and terminated Perry because of her disability, and because she requested a reasonable accommodation and protected FMLA leave. CaptureNet interfered with Perry's entitlement to FMLA leave and reinstatement following protected FMLA leave, and illegally denied Perry FMLA leave and reinstatement. CaptureNet refused Perry reasonable accommodations for her disability which she had requested.

4.25. CaptureNet's actions in terminating Perry, denying her a reasonable accommodation, and denying her reinstatement were taken willfully and maliciously in the face of its knowledge of its legal obligations.

## 5. CAUSES OF ACTION: DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER THE AMERICANS WITH DISABILITIES ACT

5.1. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

5.2. Plaintiff had a disability. CaptureNet regarded Plaintiff as disabled.

5.3. Plaintiff was qualified for her position.

5.4. Defendant discriminated against Plaintiff and terminated Plaintiff because of her disability and/or perceived disability.

5.5. Defendant failed or refused to make a reasonable workplace accommodation to a known physical or mental limitation of Plaintiff, an otherwise qualified employee with a disability.

5.6. As a result of Defendant's intentional, discriminatory, and/or otherwise unlawful acts described above, Plaintiff has suffered and continues to suffer mental anguish, emotional

pain and suffering, and damage to her professional reputation. Plaintiff also sues for the recovery of punitive damages as authorized by statute.

### 6. CAUSES OF ACTION: INTERFERENCE AND RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

6.1. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

6.2. Defendant is a covered employer under the FMLA.

6.3. Plaintiff was an eligible employee as that term is defined under the FMLA.

6.4. Plaintiff gave proper notice of her need for leave under the FMLA.

6.5. Plaintiff was entitled to take leave under the FMLA.

6.6. Defendant denied Plaintiff FMLA leave to which she was entitled under the FMLA.

6.7. Defendant also denied Plaintiff the right to reinstatement following her FMLA leave to which she was entitled under the FMLA. It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA.

6.8. Defendant's denial of Plaintiff's rights under the FMLA caused her prejudice.

6.9. Plaintiff engaged in protected activity under the FMLA by requesting leave under the FMLA.

6.10. Plaintiff was denied the FMLA leave she requested and was terminated instead.

6.11. Defendant terminated Plaintiff in retaliation for requesting federally protected leave under the FMLA, 29 U.S.C. § 2601, *et seq.* It is unlawful for any employer to discharge or discriminate against any individual for seeking FMLA leave.

6.12. Defendant knowingly and willfully violated the FMLA.

6.13. Plaintiff brings this action within the extended statute of limitations for willful violation of the FMLA.

6.14. As a result of Defendant's intentional, discriminatory, and/or otherwise unlawful acts described above, Plaintiff also sues for the recovery of liquidated damages as authorized by statute.

## 7. DAMAGES

7.1. As a result of Defendant's conduct, Plaintiff seeks the following relief: (1) past and future lost wages and benefits; (2) out of pocket expenses; (3) costs of court and attorney's fees; (4) past and future mental anguish and emotional distress damages; (5) compensatory damages; and (6) all other damages to which she shows herself entitled, whether in equity or at law.

7.2. The wrongful conduct of Defendant is evidenced by a consciously indifferent attitude towards employees' rights under the FMLA and the ADA. As a result of this conduct, liquidated and punitive damages should be assessed against Defendant so as to deter this type of conduct in the future.

## 8. JURY DEMAND

8.1. Plaintiff demands a jury.

## 9. PRAYER

9.1. Plaintiff respectfully prays for the following relief:

    9.1.1. Judgment against Defendant for actual damages sustained by Plaintiff as alleged herein;

    9.1.2. Grant Plaintiff general damages for the damage to Plaintiff caused by Defendant's violations of the FMLA;

    9.1.3. Grant Plaintiff general damages for the damage to Plaintiff caused by Defendant's violations of the ADA;

    9.1.4. Pre-judgment interest at the highest legal rate;

    9.1.5. Post-judgment interest at the highest legal rate until paid;

    9.1.6. Back-pay;

    9.1.7. Front-pay;

9.1.8.   Damages for emotional distress and mental anguish in the past and future;

9.1.9.   Liquidated damages;

9.1.10.  Exemplary damages;

9.1.11.  Attorneys' fees;

9.1.12.  All costs of court;

9.1.13.  Such other and further relief, at law or in equity, general or special to which Plaintiff may show she is justly entitled.

Respectfully submitted,

SHELLIST LAZARZ SLOBIN LLP

*/s/ Dorian Vandenberg-Rodes*
Todd Slobin
State Bar No. 24002953
tslobin@eeoc.net
Dorian Vandenberg-Rodes
State Bar No. 24088573
drodes@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
(713) 621-2277 (Tel)
(713) 621-0993 (Fax)

ATTORNEYS FOR PLAINTIFF